ST PAUL FIRE & MARINE INSURANCE COMPANY v AMERICAN
HOME ASSURANCE COMPANY

CONTINENTAL CASUALTY COMPANY v AMERICAN HOME
ASSURANCE COMPANY

Docket Nos. 130843, 130844. Submitted July 7, 1992, at Grand Rapids.
Decided December 21, 1992, at 9:35 A.M. Leave to appeal
sought.

In separate actions in the Kent Circuit Court, St. Paul Fire &
Marine Insurance Company and Continental Casualty Com-
pany sought contribution from American Home Assurance
Company for amounts paid in settlement of, and legal fees
related to, a legal malpractice suit filed against Frederick A.
Grimm and his former law firm. The attorney and the law firm
were insured for malpractice liability by St. Paul and Continen-
tal under policies that contained clauses providing for pro-rata
allocation of liability among insurers, and by American under a
policy that contained a clause limiting that insurer's liability to
the amount of loss in excess of the coverage provided by other
insurance. The amount of the settlement and expenses incurred
in the defense of the malpractice action were within the
combined policy limits of the St. Paul and Continental policies.
The actions were consolidated and the court, Dennis C. Ko-
lenda, J., pursuant to a stipulation of facts by the parties,
entered judgment for St. Paul and Continental, determining
the other insurance clauses of all three policies to be conflicting
and mutually repugnant, requiring proration of liability among
the three insurers. St. Paul and Continental appealed, and the
appeals were consolidated. .

The Court of Appeals *held:*

1. A pro-rata other insurance clause in one applicable insur-
ance policy and an excess other insurance clause in another
applicable insurance policy are not automatically in conflict or
mutually repugnant. Such clauses are to be construed in a

REFERENCES

Am Jur 2d, Insurance §§ 300, 1781-1782, 1789-1792, 1798.

Resolution of conflicts, in non-automobile liability insurance poli-
cies, between excess or pro-rata "other insurance" clauses. 12
ALR4th 993.

manner that gives effect to the intent of the contracting parties.

2. In this case, the other insurance clauses, when so construed, lead to the conclusions that coverage under the St. Paul and Continental policies was primary, coverage under the American policy was secondary, St. Paul and Continental are liable for the settlement and defense costs, and American is free of any liability.

Reversed.

INSURANCE — POLICIES — OTHER INSURANCE CLAUSES.

A pro-rata other insurance clause in one applicable insurance policy and an excess other insurance clause in another applicable insurance policy are not automatically in conflict or mutually repugnant and are to be construed in a manner that gives effect to the intent of the contracting parties.

*Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C.* (by *Curt A. Benson*), for St. Paul Fire & Marine Insurance Company and Continental Casualty Company.

*Collins, Einhorn & Farrell, P.C.* (by *Gerald A. Pawlak* and *Theresa M. Asoklis*), for American Home Assurance Company.

Before: DOCTOROFF, C.J., and REILLY and JANSEN, JJ.

PER CURIAM. In these consolidated appeals defendant, American Home Assurance Company, appeals as of right from a June 25, 1990, judgment entered by the Kent Circuit Court awarding plaintiff St. Paul Fire & Marine Insurance Company damages, interest, and costs in the amount of $120,254.25 and plaintiff Continental Casualty Company damages, interest, and costs in the amount of $106,640.56. We reverse the judgment entered in favor of plaintiffs.

These consolidated cases present an issue regarding the legal effect to be given the "other

insurance" provisions of three professional malpractice insurance policies applicable to the same risk, where plaintiffs' policies each contain "prorata" provisions and defendant's policy contains an "excess" provision. On April 19, 1978, a former client of attorney Fredrick A. Grimm and his former law firm filed a legal malpractice suit against Grimm and the law firm. Both St. Paul and Continental defended this action on behalf of Grimm and the law firm pursuant to their legal malpractice insurance policies. The malpractice suit was subsequently settled before trial, with St. Paul and Continental defending and contributing toward the settlement of the claims. Although defendant had issued two potentially applicable malpractice policies to Grimm and the law firm, defendant did not defend or contribute to the settlement of the claims involved.

Subsequently, both St. Paul and Continental brought suit against defendant, seeking contribution for the expenses they incurred in defending the malpractice suit. Thereafter, pursuant to a stipulated statement of facts, the trial court entered a judgment in favor of plaintiffs, awarding St. Paul $120,254.25 and Continental $106,640.56, representing defendant's pro-rata share of damages, interest, and costs resulting from the representation of Grimm and the law firm in the malpractice action. Defendant now appeals as of right, and we reverse.

Defendant contends on appeal that its "claims made" policy, which was in effect at the time the malpractice suit was commenced, does not render it liable because that policy's "other insurance" excess provision predominates over plaintiffs' "other insurance" pro-rata provisions. We agree with defendant.

Many insurance policies contain language in-

tended to restrict or escape liability for a particular risk in the event there exists other insurance covering the same risk. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537, 542; 383 NW2d 590 (1986). Such "other insurance" provisions are of three basic types: (1) a pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event; (2) an escape or "no liability" clause, which provides that there shall be no liability if the risk is covered by other insurance; and (3) an excess clause, which limits the insurer's liability to the amount of loss in excess of the coverage provided by other insurance. *Id.; Jones v Medox,* 430 A2d 488, 489, n 1 (DC App, 1981).

Disputes often occur where, as here, two or more insurance policies covering the same risk contain such provisions. *Federal Kemper,* p 542. In the present case, it is important to note that the dispute involves plaintiffs' pro-rata clauses and defendant's excess clause. With this in mind, we look at two trends that have evolved to resolve conflicts between "other insurance" clauses.

The majority rule attempts to reconcile the competing provisions by discerning the parties' intent through an analysis of the clauses. *Federal Kemper,* p 543; *Jones,* p 491; *Farm Bureau Mutual Ins Co v Horace Mann Ins Co,* 131 Mich App 98, 102; 345 NW2d 655 (1983). The minority or *Lamb-Weston* approach, *Lamb-Weston, Inc v Oregon Automobile Ins Co,* 219 Or 110; 341 P2d 110 (1959), deems the conflicting provisions "mutually repugnant," rejects the provisions in toto, and requires proration of liability. *Federal Kemper,* p 543; *Jones,* pp 489, 492; *Farm Bureau,* pp 103-104. In the case at bar, the trial court applied the *Lamb-Weston* rule, concluding that the "other insur-

ance" clauses in question were "repugnant one to the other, and each must be rejected, requiring proration." We disagree with the trial court's conclusion and adopt the majority rule for reconciling pro-rata and excess "other insurance" clauses.

In this regard, we find *Jones* instructive. In *Jones,* the court adopted the majority rule for resolving a dispute involving a pro-rata clause and an excess clause. *Id.,* p 489. In doing so, the court stated that it did not view such clauses as being irreconcilable, and it chose not to adopt the minority rule, which would require the court to automatically sweep away the contractual language, and perhaps the negotiated intent of the parties as well. *Id.* The *Jones* court concluded by stating that it did "not view a pro-rata clause and an excess clause as being automatically in conflict or mutually repugnant." *Id.,* p 493.

We also are of the opinion that a pro-rata clause and an excess clause are not necessarily "mutually repugnant" or automatically in conflict. When an excess clause is inserted in a typical liability insurance policy, it is generally the insurer's intent that the policy only afford secondary coverage when the same loss is covered by "other insurance." *Id.,* p 491. However, a provision limiting a policy to only pro-rata liability in the event of concurrent coverage is generally intended to become effective only when other valid and collectible primary insurance is available. *Id.*

> Stated another way, these courts assume that the standard phrase "other valid and collectible insurance" means other valid and collectible *primary* insurance. It follows, then, that the policy containing the pro rata clause is other valid and collectible primary insurance that triggers application of the excess clause in the second policy. The excess clause in the second policy therefore is

given full effect and that carrier is liable only for the loss after the primary insurer has paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only. [*Jones,* p 491. Emphasis in original.]

In the present case, plaintiffs have pro-rata "other insurance" provisions in their respective policies. These policies provide concurrent coverage and constitute primary coverage. Therefore, plaintiffs "will be required to shoulder the loss up to [their] policy limit[s]." *Jones,* p 494. Defendant's excess "other insurance" provision provides only secondary coverage and, in a situation such as that in the present case, will be given full effect. *Id.* Defendant is liable for the loss only to the extent that the claim against the insureds exceeds the policy limits of the insurance policies containing the pro-rata clauses. Defendant has no liability as the excess insurer because plaintiffs' policy limits exceeded the settlement and defense costs in the underlying malpractice case.

We conclude that the pro-rata clauses and the excess clause are not in conflict or mutually repugnant. Because they do not conflict, the minority or *Lamb-Weston* rule is inapplicable. Cf. *Admiral Ins Co v Columbia Casualty Ins Co,* 194 Mich App 300, 316-317; 486 NW2d 351 (1992) (minority rule inapplicable where the plaintiff's pro-rata policy for primary insurance and the defendant's policy providing for excess insurance do not conflict); *Rogan v Morton,* 167 Mich App 483, 490-491; 423 NW2d 237 (1988) (majority rule applied where there were

two separate insurers and two separate insureds being protected against two distinct losses or risks).

We find both *Farm Bureau, supra,* and *Mary Free Bed Hosp & Rehabilitation Center v Ins Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983), distinguishable from the present case. Neither case involved an alleged conflict between pro-rata and excess "other insurance" clauses. *Farm Bureau* involved a dispute concerning a pro-rata clause and an escape clause, while *Mary Free Bed* involved a dispute concerning two excess clauses. Additionally, we should note that the Supreme Court in *Federal Kemper* pointed out that neither *Farm Bureau* nor *Mary Free Bed* involved no-fault insurance, and the Court "express[ed] no opinion as to the correctness of these decisions." *Federal Kemper,* p 543, n 5.

We conclude that the majority rule is the better approach for reconciling pro-rata and excess "other insurance" clauses. Such clauses are not automatically in conflict or mutually repugnant, and the excess clause is to be given full effect. In this case, because the settlement and defense costs did not exceed plaintiffs' policy limits, defendant is exonerated from all liability. Given our resolution of this issue, we need not address defendant's remaining issue. We reverse the judgment entered in favor of plaintiffs.

Reversed.