ST PAUL FIRE & MARINE INSURANCE COMPANY v
AMERICAN HOME ASSURANCE COMPANY

CONTINENTAL CASUALTY COMPANY v
AMERICAN HOME ASSURANCE COMPANY

Docket Nos. 95632, 95633. Argued November 2, 1993 (Calendar
No. 6). Decided March 1, 1994.

St. Paul Fire & Marine Insurance Company and Continental
Casualty Company brought actions in the Kent Circuit Court
against American Home Assurance Company, seeking pro-
ration of the defense and settlement costs of an underlying
legal malpractice action among the three insurers on the basis
of "other insurance" clauses in their respective policies. The
court, Dennis C. Kolenda, J., entered judgments for the plain-
tiffs. The Court of Appeals, DOCTOROFF, C.J., and REILLY and
JANSEN, JJ., reversed in an opinion per curiam, reasoning that
pro-rata and excess other insurance clauses can be reconciled
by assigning primary liability to the insurers whose policies
contain pro-rata clauses and excusing insurers whose policies
contain excess clauses, unless liability exceeds a pro-rata insur-
er's limits. It found that because the underlying malpractice
action was settled for less than the limits of the plaintiffs'
policies, the defendant had no obligation either to defend or to
indemnify (Docket Nos. 130843, 130844). The plaintiffs appeal.

In a unanimous opinion by Justice MALLETT, the Supreme
Court *held:*

Where there is a dispute between pro-rata and excess other
insurance clauses in competing malpractice policies, and the
clauses are not in conflict or mutually repugnant, the insurer
with the pro-rata clause must cover all losses up to the policy
limit.

1. Other insurance clauses, inserted in policies to vary or
limit the insurer's liability when additional coverage can be
established, fall into three categories: a pro-rata clause, limit-
ing the insurer's liability to a proportionate percentage of all
insurance covering an event; an escape or no-liability clause,
providing that the insurer is not liable if the risk is covered by
other insurance; and an excess clause, limiting the insurer's
liability to the amount of loss in excess of the coverage pro-

vided by other insurance. A pro-rata clause becomes effective only when other valid and collectible primary insurance is available, while excess other insurance affords secondary coverage when the same loss is covered by other insurance.

2. There are two types of "errors and omissions" insurance policies afforded professionals: "discovery" or "claims made," and "occurrence." A claims-made policy provides coverage no matter when the alleged error occurred, provided it is made against the insurer during the policy period. An occurrence policy provides indemnity no matter when the claim is brought, provided it occurred during the policy period. In this case, the plaintiffs had occurrence policies and the defendant had a claims-made policy with the attorney in the underlying action.

3. Other insurance clauses are not automatically irreconcilable, requiring an appellate court to override contract language and, perhaps, the negotiated intent of the parties. Rather, where there is a dispute between pro-rata and excess other insurance clauses in competing malpractice policies, and, as in this case, the clauses are not in conflict or mutually repugnant, the insurer with the pro-rata clause must cover all losses up to the policy limit. Thus, American Home is absolved of all liability.

Affirmed.

197 Mich App 521; 495 NW2d 814 (1992) affirmed.

*Denenberg, Tuffley & Jamieson, P.C.* (by *Meigs M. Day*), for the plaintiffs.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Noreen L. Slank, Theresa M. Asoklis,* and *Gerald A. Pawlak*), for the defendant.

Amicus Curiae:

*Harvey, Kruse, Westen & Milan, P.C.* (by *Mark T. Rajt*), for the Insurance Company of North America.

MALLETT, J. This is an action among three insurance companies: St. Paul Fire & Marine Insurance Company, Continental Casualty Company, plaintiffs-appellants, and American Home Assurance

Company, defendant-appellee. In this consolidated appeal, we granted leave to decide the legal effect to be given plaintiff-appellants' pro-rata "other insurance" clause and defendant-appellee's excess "other insurance" clause contained in their respective malpractice insurance policies.

More specifically, we must determine whether to adopt the *Lamb-Weston* doctrine[1] that views all "other insurance" clauses as irreconcilable and prorates liability among all insurers, or to adopt the majority rule that endeavors to reconcile the competing clauses if possible. We hold that the majority rule is the better approach to reconciling competing "other insurance" clauses.

I

From 1968 until 1974, John and Eileen Zatolokin were represented by attorney Frederic A. Grimm and his former law firm.[2] In September of 1974, Grimm was appointed a judge of the Muskegon Circuit Court. Following his appointment, Grimm advised the Zatolokins that he would be unable to continue representing their interests. Attorney Forsythe and the law firm in which he was affiliated succeeded Grimm and assumed representation of the Zatolokins.

In March of 1976, Forsythe apprised the Zatolokins that their claims on their earlier investments were no longer collectible. He recommended that the investments be written off as bad debts for federal income tax purposes.[3] Subsequently, the

---

[1] *Lamb-Weston, Inc v Oregon Automobile Ins Co,* 219 Or 110; 341 P2d 110 (1959).

[2] The Zatolokins claimed malpractice arising out of a series of six investments that they made between June of 1967 and March of 1968.

[3] Several of the Zatolokins' investments consisted of loans.

Zatolokins brought suit against attorneys Grimm and Forsythe and their respective law firms.[4]

Eventually, the case against Grimm and his law firm was settled. Plaintiffs in these actions defended the lawsuit on behalf of the insured and contributed to the settlement. However, pursuant to its contract with the insured, American Home neither defended the lawsuit nor contributed to the settlement.

Accordingly, plaintiffs brought suit seeking a proration of the defense and settlement costs among the three insurers on the basis of their respective policy limits. Judge Kolenda applying the *Lamb-Weston* rule found in favor of the plaintiff insurers and entered judgments of $120,254.25 for St. Paul, and $106,640.56 for CNA.[5] The Court of Appeals reversed.[6]

The Court of Appeals applied the majority rule and reasoned that pro-rata and excess "other insurance" clauses can be reconciled by assigning primary liability to the insurers whose policies contain pro-rata clauses and excusing the insurer whose policy contains an excess clause, unless liability exceeds the pro-rata insurer's limits.[7] In the present case, the malpractice lawsuit was settled for less than the limits of plaintiffs' policies. Therefore, the Court of Appeals ruled that American Home had no obligation either to defend or to indemnify. We subsequently granted leave to appeal and now affirm the Court of Appeals decision. On August 20, 1993, we granted leave.[8]

[4] The claims against Forsythe and his law firm have been settled and are not the subject of this appeal. Instead, this focuses solely on the malpractice claims against Grimm and his law firm.

[5] Judge Kolenda's finding was based upon a stipulated statement of facts following cross motions for summary judgment.

[6] 197 Mich App 521; 495 NW2d 814 (1992).

[7] *Id.* at 526.

[8] 443 Mich 869.

II

A

Before addressing the arguments some brief background may be instructive. Broadly defined, insurance is a contract by which one party, for a consideration, assumes particular risks of the other party.[9] The parties have the right to employ whatever terms they wish, and the courts will not rewrite them as long as the terms do not conflict with pertinent statutes or public policy. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992).[10]

Included in many of these contracts are "other insurance" clauses. These clauses originated in the area of property insurance and were designed to protect the insurer from the moral hazards of fraud and carelessness incident to the over-insurance of property.[11] "Other insurance" clauses are provisions inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss.[12] Insurance companies continue to include these provisions as standard clauses in liability policies even though potential fraud through over-insurance in this context is remote.[13]

---

[9] 44 CJS, Insurance, § 1, p 73.

[10] See also *Group Ins Co of Michigan v Czopek,* 440 Mich 590, 595-596; 489 NW2d 444 (1992); *Michigan Mutual Ins Co v Allstate Ins Co,* 426 Mich 346; 395 NW2d 192 (1986).

[11] See, generally, 7 Couch, Insurance, 2d (rev ed), §§ 37:397 to 37:418, pp 987-1007 and 9 Couch, Insurance, 2d (rev ed), §§ 37B:1 to 37B:130, pp 14-130.

[12] See, generally, 44 Am Jur 2d, Insurance, §§ 1270-1276, pp 209-216.

[13] Commentators have painstakingly discussed the perplexing exercise of untangling the snarl created by "other insurance" clauses. See Morello, *The problem of multiple uninsured motorist coverages: Who pays?,* 62 Conn B J 358 (1988); Jerry, *New developments in Kansas*

Justice RILEY, writing for a unanimous Court, recognized that "other insurance" clauses fall into three general categories. The effect of each in the event of concurrent coverage is to reduce the insurer's loss. They are:

1. A pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event;
2. An escape or no-liability clause, which provides that there shall be no liability if the risk is covered by other insurance; and
3. An excess clause, which limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537, 542; 383 NW2d 590 (1986).[14]

---

*insurance law,* 37 U Kan L R 841 (1989); Kahn, *The "other insurance" clause,* 19 Forum 591 (1984); Fischer, *Why are insurance contracts subject to special rules of interpretation?: Text versus context,* 24 Ariz St L J 995 (1992); comment, *"Other insurance" clauses: The* Lamb-Weston *doctrine,* 47 Or L R 430 (1968); Alleman, *Resolving the "other insurance" dilemma: Ordering disputes among primary and excess policies,* 30 U Kan L R 75 (1981); Watson, *The other insurance dilemma,* 16 Federation Insurance Council, Forum 47 (1966); anno: 76 ALR2d 502, § 2, p 505.

As many commentators have pointed out, it is well settled that a well-established policy guides a court's decision from the outset. That is the rule that courts must, when possible, give the language of each policy its intended effect.

[14] Mallen and Smith in their treatise, Legal Malpractice (3d ed), vol 2, § 28.25, p 763, provide additional illumination.

Most policies provide for the contingency of other insurance. This typically appears as an "other insurance" clause in the conditions section of the policy. As a provision in the insuring agreement, such a clause becomes a predicate to coverage. A common provision is the "pro rata" clause which specifies proration of the loss. The typical approach is based upon the ratio of the limits of liability of the company's policy to the total limits of all other valid and collectible insurance against

The central dispute revolves around the "other insurance" clause in each party's respective malpractice policy. The St. Paul "other insurance" clause reads:

> [I]f the Insured has other insurance against a loss covered by this Policy, the Company shall not be liable under this Policy for a greater proportion of such loss than the limit of liability stated in the Declarations bears to the total limit of liability of all valid and collectible insurance against such loss . . . .

CNA's "other insurance" clause reads:

> If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy to a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss . . . .[15]

St. Paul and CNA's "other insurance" clauses are commonly known as "pro rata" clauses for the

such a loss. . . . There are two other common "other insurance" provisions. The "excess" clause typically limits the insurer's liability to the amount by which the insurance exceeds that provided by other valid and collectible insurance. The "escape" or "no liability" clause seeks to avoid any coverage for the loss if there is other valid and collectible insurance.

15 CNA's "other insurance" also contained the following:

> [W]ith respect to acts or omissions which occur prior to the policy period, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance . . . .

The trial court found, and CNA did not dispute, that "the circumstances which invoke it [the CNA excess 'other insurance' clause] do not exist in this case. Accordingly, the CNA excess insurance clause is not at issue."

obvious reason that the language creates a formula for establishing the liability of the insurer when other, collectible insurance exists on a proportionate basis. In other words, they are generally intended to become effective only when other valid and collectible primary insurance is available. *Jones v Medox, Inc,* 430 A2d 488, 491 (DC App, 1981).

American Home's "other insurance" clause reads:

> If the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, with respect to acts or omissions which occur prior to the inception date of the policy, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only in the amount by which the applicable limits of liability of this policy exceeds the sum of the applicable limits of liability of all such other insurance.* [Emphasis added.][16]

The language emphasized above is known as an excess "other-insurance clause." It provides that if other, collectible insurance covers the occurrence, the "policy will provide coverage only for liability above the maximum coverage of the primary pol-

[16] It was undisputed that the acts or omissions of attorney Grimm's alleged legal malpractice happened while St. Paul's and CNA's occurrence policies were in effect, August 29, 1972, through October 7, 1974, and August 29, 1970, through August 29, 1971, respectively. It was also undisputed that the claim against attorney Grimm was made while American Home's claims-made policy was in effect, i.e., August 19, 1977 to August 19, 1978. Moreover, each policy contained an "other insurance" clause designed to limit liability and to take effect in situations in which the insured event was covered by another insurance company.

icy or policies."[17] In other words, it is generally the insurer's intent that the policy only afford secondary coverage when the same loss is covered by "other insurance." *Id.*

Most professional liability policies contain an "other insurance" clause because of the frequency of overlapping periods of insurance coverage.[18] As in this case, the clause was inserted in "error and omission" insurance policies to address the issue of how liability under more than one applicable policy is to be apportioned, or if it is to be apportioned at all. *Stine v Continental Casualty Co,* 419 Mich 89, 96-97; 349 NW2d 127 (1984).

B

The case before us involves two types of errors and omissions insurance policies afforded the professional. They are "discovery" or "claims made" policies and the so-called "occurrence" policy. In *Stine, supra* at 97, we outlined the differences between "occurrence" and "claims made" insurance policies available for professionals:

> As a general proposition, although not in every case . . . a "discovery" or "claims made" policy is one in which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is made against the insurer during the policy period. Some "claims made" policies . . . are written to provide coverage only for negligent acts or omis-

---

[17] 8A Appleman, Insurance Law & Practice, § 4909, p 384.

[18] Commentators Mallen and Smith discuss the situation before us. They point out that an attorney may have several professional liability insurance policies available that apply to the same act or omission claim. Consequently, overlapping coverages are likely to exist where the present policy is on a claims-made basis and there was an occurrence policy when the act or omission occurred. See Mallen & Smith, n 14 *supra,* § 28.25, p 762.

sions which occur during the policy period and for which the claim is made against the insured during that period.

An "occurrence" insurance policy, on the other hand, generally is one in which indemnity is provided no matter when the claim is brought for the misdeed complained of, providing it occurred during the policy period.

In the instant case, each insurer had a contractual relationship with attorney Grimm. Plaintiffs and Grimm agreed to contract for an occurrence policy,[19] while American Home and Grimm opted for a claims-made policy.[20] Consequently, plaintiffs' occurrence policies were "on" the risk for Grimm's alleged legal malpractice because the acts or omissions occurred during those policy periods.

On the other hand, American Home's "other insurance" provision of its "claims made" policy functions as an excess clause only, whenever the acts or omissions complained of "occur prior to the inception date of the policy . . . ."[21] The excess portion of American Home's hybrid "other insurance" clause is activated in this case because it is undenied that all the acts or omissions occurred before the inception date of the American Home policy.

Finally, we recognize the vital role "other insur-

[19] The occurrence policy protects against a future claim arising out of acts or omissions that occurred during the policy year. Both insured and insurer anticipate that the claim would probably not be made until after the policy period and possibly when another policy is in effect. Mallen & Smith, n 14 *supra,* p 764.

[20] Claims-made coverage typically provides as a part of the insuring agreement that its application depends on there being no other insurance applicable to such act, error, or omission. Such other insurance is usually that of a previous occurrence policy. *Id.*

For a more general discussion of the two types of policies afforded professionals, see also generally 45 CJS, Insurance, § 430, p 158.

[21] In fact, it appears that if the act or omissions asserted occurred before the inception date of CNA's policy, CNA would have found itself in the position of an excess carrier as well. See *ante* at 567.

ance" clauses play in insurance policies. Moreover, these clauses are inserted deliberately and are thus the negotiated intent of the contracting parties. They afford interested parties, insurers, insureds, and claimants a way to sort out their respective rights and responsibilities under the applicable insuring agreements.

Accordingly, we shall refrain from rewriting the contracts and instead give effect to the meaning and intent of the policy language. *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197; 476 NW2d 392 (1991); *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962).[22]

C

The question presented requires this Court to determine whether a pro-rata "other insurance" clause in two malpractice policies and an excess "other insurance" clause in another can be reconciled to give effect to the intent of the contracting parties, or whether the clauses are irreconcilable and require that this Court disregard the contractual language and impose a pro-rata share of the loss upon each insurance company. Our options are: (1) the minority view that prorates the loss among all the insurers, or (2) the majority view that requires the insurer with the pro-rata clause to cover all losses up to its policy limit.[23]

1

The first option is the rule adopted by the Ore-

---

[22] See also 45 CJS, Insurance, § 358, p 75.

[23] This Court in *Federal Kemper, supra,* anticipated that disputes will occur when two or more insurance policies covering the same risks contain such competing provisions. In addition, we acknowledged that two trends have emerged to resolve conflicts between competing pro-rata and excess "other insurance" clauses.

gon Supreme Court in *Lamb-Weston v Oregon Automobile Ins Co,* 219 Or 110, 129; 341 P2d 110 (1959).

> In our opinion, whether one policy uses one clause or another, when any come in conflict with the "other insurance" clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.

Later, in *Sparling v Allstate Ins Co,* 249 Or 471; 439 P2d 616 (1968), the Oregon Supreme Court expanded upon its previous holding in *Lamb-Weston.* In *Sparling,* the court held that "other insurance" clauses conflict with one another for purposes of the rule, making them repugnant, whenever the policies containing those clauses cover the same loss and the clauses attempt to limit coverage in light of other insurance. *Id.* at 476.

Only a few jurisdictions have followed the *Lamb-Weston* rule. Nonetheless, plaintiffs contend that Michigan adheres to the minority rule, citing as support *Farm Bureau Mutual Ins Co v Horace Mann Ins Co,* 131 Mich App 98; 345 NW2d 655 (1983), and *Mary Free Bed Hosp & Rehabilitation Center v Ins Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983).

In *Farm Bureau,* the Court of Appeals encountered a dispute between a pro-rata clause and an escape "other insurance" clause. The *Farm Bureau* panel expressly rejected the majority view. In holding that the escape clause and pro-rata clause conflicted, the Court stated:

> The majority view attempts to resolve an intractable conflict. This is not possible. We recognize "the absurdity of attempting to assume that where conflicting 'other insurance' provisions exist

by reason of overlapping coverages of the same occurrence the provisions of one policy must yield to the provisions of the other." Courts which have arrived at that conclusion represent the minority view. Under that approach, the conflicting "other insurance" clauses are declared "repugnant" and are "rejected in toto." Once the conflicting clauses are disregarded, both policies clearly provide coverage. Each insurer's liability is then prorated based on the proportion of the combined policy limits represented by the limits of each insurer's policy. We adopt the minority view. [*Id.* at 103-104. Citations omitted.]

The *Farm Bureau* panel also decided the case of *Mary Free Bed, supra.* In *Mary Free Bed*, the Court was confronted with two identical excess "other insurance" clauses that were activated on the same risk. The panel held that the clauses conflicted because both could not be excess to the other. The panel merely cited its holding in *Farm Bureau*, which followed *Lamb-Weston.*

Consequently, the plaintiffs argue that their prorata "other insurance" clause and the excess "other insurance" clause in American Home's policy are mutually repugnant, and thus the liability must be shared jointly by the three insurers. Taking issue with the Court of Appeals conclusion that the pro-rata and excess "other insurance" clauses are not necessarily mutually repugnant or automatically in conflict, they urge this Court to reject the majority rule and to adopt the *Lamb-Weston* rule.[24] Moreover, they contend that the

[24] It appears that plaintiffs' reliance on *Farm Bureau* and *Mary Free Bed* was misplaced because neither case involved a conflict between a pro-rata clause and an excess clause. Nonetheless, with the exception of *Farm Bureau*, cases from the Court of Appeals indicate that application of the minority rule in Michigan has been limited to instances where the competing policy language was truly in conflict, i.e., identical clauses that would in effect leave the insured without protection. See *Secura Ins Co v Cincinnati Ins Co,* 198 Mich App 243;

majority rule requires circularity of reasoning, and that the decision regarding which policy constitutes other valid and collectible insurance triggering the "other insurance" clause of the second policy will depend upon which contract is read first.

2

The second option is the interpretation embraced by the majority of jurisdictions that have considered competing pro-rata and excess "other insurance" clauses.[25] Courts adopting the majority view have reconciled the pro-rata clause and the excess clause by interpreting the policy containing the excess clause as secondary coverage where there is another insurance policy covering the same risk. See *St Paul Mercury Ins Co v Pennsylvania Casualty Co,* 642 F Supp 180 (D Wy, 1986). The result, under this view, is that the excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the pro-rata "other insurance" clause.[26]

American Home maintains that Michigan courts have adopted the majority rule. See *Vandermore v Michigan Millers Mutual Ins Co,* 34 Mich App 429;

497 NW2d 230 (1993). See also *Nat'l Indemnity Co v Budget Rent A Car Systems, Inc,* 195 Mich App 186; 489 NW2d 175 (1992). In *Nat'l Indemnity* at 189, the Court of Appeals was faced with two insurance policies claimed to be excess to any other coverage, even though each provided coverage if the other policy did not exist. Citing *Farm Bureau, supra,* as supporting authority, the panel expressly adopted the *Lamb-Weston* rule. However, we express no opinion regarding the correctness of the *Farm Bureau* decision.

[25] An annotation at 12 ALR4th 993, collects cases from over twenty different jurisdictions that hold, when an excess clause conflicts with a pro-rata clause, the policy with the pro-rata clause should be applied first up to its policy limit, with the excess policy covering the remainder, if any, i.e., secondary coverage.

[26] See n 14.

191 NW2d 501 (1971), and *Werner v Travelers Indemnity Co,* 55 Mich App 390; 222 NW2d 254 (1974).

In *Vandermore,* the Court of Appeals affirmed a judgment against the carrier whose policy contained a no-liability provision, which judgment required that the carrier bear a loss without contribution from another carrier that had a policy in effect at the pertinent time because that policy contained an excess provision. However, the Court explicitly noted that, because of "the equities of the two insurers," there was no need for it to attempt to generally reconcile no-liability and excess-liability clauses. *Id.* at 433.

In *Werner,* the Court of Appeals spoke approvingly of the majority rule and expressly rejected the minority rule. *Id.* at 394-401. However, the Court's discussion of it was merely dictum. Consequently, the question of allocating loss among insurers while one policy has an insurance clause calling for the pro-rata sharing of the loss and the other specifies that it is only for coverage in excess of other policies despite the arguments of the parties, has not been decided by our state courts. However, the issue regarding competing pro-rata and excess "other insurance" clauses has been considered in numerous jurisdictions.[27]

A carefully considered opinion that addresses the comparable worthiness of the majority rule and the *Lamb-Weston* rule is *Jones v Medox, Inc,* 430 A2d 488 (DC App, 1981). In order to reconcile a pro-rata and an excess "other insurance" clause,

---

[27] 12 ALR4th 993, § 3, p 998. We find persuasive an earlier opinion of the United States Court of Appeals for the Sixth Circuit, which found that " 'when an excess clause . . . conflicts with another "other insurance" clause, and more particularly, a "pro-rata" clause, in a second policy, the excess clause controls and is to be given full effect.' " *P L Kanter Agency, Inc v Continental Casualty Co,* 541 F2d 519, 522-523 (CA 6, 1976) (a diversity case applying Michigan law).

the *Jones* court reasoned that the policies containing a pro-rata clause are effective only when "other valid and collectible" primary insurance is available. *Id.* at 491. On the other hand, a policy containing an excess "other insurance" clause is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro-rata clause. Consequently, the policy containing the excess clause becomes secondary coverage because the carrier is liable only for the loss after the primary insurer has paid up to its policy limits. *Id.* The court specifically stated:

> "[W]here an excess clause is inserted in a typical . . . liability insurance policy the usual intent of the insurer is that the policy will afford only secondary coverage when the loss is covered by 'other insurance.' On the other hand, a provision that limits a policy to only pro rata liability in the event of concurrent coverage usually is intended to become effective only when other valid and collectible primary insurance is available. . . ."

Stated another way, these courts assume that the standard phrase "other valid and collectible insurance" means other valid and collectible primary insurance. It follows, then, that the policy containing the pro rata clause is other valid and collectible primary insurance that triggers application of the excess clause in the second policy. The excess clause in the second policy therefore is given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy con-

taining the excess clause becomes secondary coverage only.[28] [ *Id.*]

The *Jones* court in addressing the *Lamb-Weston* rule stated:

The *Lamb-Weston* rule presents an appealingly, simple and no-nonsense way to deal with the vagaries of insurance policies. *A principal concern of courts adopting this rule apparently is that one insurance company is getting "stuck" and that regardless of the intent of the contracting parties as expressed in their "other insurance" clauses, two companies covering the same risk should pay equally.* Courts swayed by this concern, however, have failed to recognize that the insurance companies have no contractual relationship with each other, and one company hardly needs to be protected from the other. Neither insurance company is getting "stuck" for anything more than it contracted to provide for its insured. Moreover, courts applying the *Lamb-Weston* rule ignore a basic rule of contracts requiring consideration of all the language in a policy to determine its meaning and intent. By sweeping away the contractual language and, perhaps the negotiated intent of the parties, these courts effectually are legislating mandatory pro rata clauses for insurance policies having "other insurance" provisions. Courts generally should take such drastic action only when presented with clearly irreconcilable provisions. [430 A2d 492-493. Emphasis added.]

### III

We are persuaded by the reasoning in *Jones, supra,* and therefore adopt the majority view for resolving disputes between pro-rata and excess

[28] Similarly, in this case, plaintiff argues that all three policies were written to be primary. In other words, the Court of Appeals labeling of the American Home policy as an excess policy was erroneous.

"other insurance" clauses.[29] Although the simplicity and ease of application of the *Lamb-Weston* rule is tempting, we find the cost of nullifying the negotiated intent of the parties alarming.[30] Accordingly, we refrain from rewriting the instant contracts and instead give effect to the meaning and intent of the policy language. *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197; 476 NW2d 392 (1991); *Eghotz, supra* at 530.

We also acknowledge that it may be necessary to declare "other insurance" clauses irreconcilable when the applicable portions of the two other insurance clauses are identical excess clauses.[31] In the example presented, there is an actual problem with circularity. Moreover, the literal interpretation of policies containing competing excess clauses would leave the insured without any coverage where it first appeared he had multiple cover-

---

[29] Although, in *Federal Kemper* we recognized the debate involving the competing rules for reconciling disputes involving pro-rata and excess "other insurance" clauses, notwithstanding, we expressed no opinion regarding the correctness of the *Lamb-Weston* rule or the majority rule. *Federal Kemper, supra* at 543, n 5.

[30] Chief Justice McFadden in dissent in *Sloviaczek v Estate of Puckett,* 98 Idaho 371, 375; 565 P2d 564 (1977), appropriately likened the problem to Alexander the Great slicing the Gordian Knot in two rather than accepting the oracles' advice that the patient untangling of the knot is what would create the master of Asia. He wrote:

> The knot, tied by King Gordius of Phrygia, was said to be so complex that it could not be undone. The oracles told that only he who would be master of Asia could undo the Gordian Knot. Many tried to untie it and failed. Alexander the Great, however, took one look and then cleaved the knot in half with his sword.

He further explained: "While such an approach to problem solving may lead to greatness in the executive or even the legislative branch of government, it is inappropriate in the judiciary." *Id.* at 375-376.

[31] Even those courts adopting the majority view almost always require the insurers to apportion the liability when confronted with conflicting excess "other insurance" clauses. See *State Farm Fire & Casualty Co v St Paul Fire & Marine Ins Co,* 268 NW2d 147, 149 (SD, 1978), and *Hartford Ins v Kentucky Farm Bureau Ins Co,* 766 SW2d 75, 76-77 (Ky App, 1989).

age. In these cases, there is no rational reason to give the language of one policy preference over identical language in the other policy.

However, that is not the case before us. Instead, we are confronted with a dispute involving pro-rata and excess "other insurance" clauses.

We do not view "other insurance" clauses as being automatically irreconcilable and choose not to adopt a rule that requires this Court to auto-matically override the contractual language and, perhaps, the negotiated intent of the parties. We therefore decline to adopt the *Lamb-Weston* rule and affirm the decision of the Court of Appeals.

IV

This case involved bewildering questions raised by "other insurance" clauses contained within individual insurance policies that insured the same risk. After examining the relative merits of the *Lamb-Weston* and majority rules, we are per-suaded that the majority rule is the better choice and adopt it as the law of Michigan. In sum, we hold that the pro-rata and the excess "other insur-ance" clauses at issue in this case are not in conflict or mutually repugnant. In addition, Ameri-can Home is absolved from all liability.

We affirm the decision of the Court of Appeals.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with MALLETT, J.