*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUTO-OWNERS INSURANCE COMPANY,

        Plaintiff-Appellant,

v

FOREST INSURANCE CENTER AGENCY, INC,
MAUCK INSURANCE AGENCY, INC, DALE
KLEFFMAN, TOM BUCKINGHAM, MICHIGAN
PALLET, INC, KAMPS HARDWOODS II, INC,
KAMPS HARDWOODS III, INC, and PK LAND
HOLDINGS, LLC,

        Defendants-Appellees.

UNPUBLISHED
October 25, 2024
11:44 AM

No. 366123
Mason Circuit Court
LC No. 2021-000256-CB

Before: O'BRIEN, P.J., and BORRELLO and N. P. HOOD, JJ.

PER CURIAM.

In this declaratory-judgment action, plaintiff, Auto-Owners Insurance Company (Auto-Owners), appeals by right the trial court's order denying summary disposition in its favor and granting summary disposition in favor of defendants, Michigan Pallet, Inc., Kamps Hardwoods II, Inc., Kamps Hardwoods III, Inc., and PK Land Holdings, LLC (collectively, the Kamps defendants), as well as defendants, Forest Insurance Center Agency (Forest), Inc., Mauck Insurance Agency, Inc. (Mauck), Dale Kleffman, and Tom Buckingham (collectively, the Forest defendants), under MCR 2.116(C)(10). Because Auto-Owners was contractually obligated to defend the Forest defendants and potentially indemnify the Kamps defendants on their behalf, we affirm.

## I. BACKGROUND

This case arises from a July 2, 2019 fire at the Kamps defendants' sawmill in Fountain, Michigan that allegedly caused over $22 million in property damage and business losses. The Kamps defendants own and operate lumber businesses within the state of Michigan. From November 2014 through July 2019, they contracted with Forest and Mauck, and independent insurance agents Kleffman and Buckingham, to procure commercial insurance for the Kamps

-1-

defendants' multiple businesses. This included coverage for the sawmill that burned down. But the Forest defendants negligently procured and maintained an insurance policy that provided only $1,250,000 for building replacement coverage, $2,133,500 for business personal property coverage, and nothing for business interruption coverage, significantly less than they required.

On August 12, 2020, the Kamps defendants sued the Forest defendants, alleging that they negligently procured inadequate commercial insurance coverage for the sawmill, thereby causing over $19 million in uninsured losses stemming from the fire.[1] According to the Kamps defendants, in January 2018, the Forest defendants reduced their business personal property coverage despite their request for additional coverage. And in January 2019, the Forest defendants inaccurately responded to the Kamps defendants' inquiries by advising them that they had blanket business interruption coverage for each of their facility locations when in fact the sawmill had no such coverage.

The Forest defendants maintained primary professional-liability insurance under an errors-and-omissions policy written by Westport Insurance Company (Westport), which provided $6 million in coverage. They also maintained secondary professional-liability insurance under a commercial umbrella policy written by Auto-Owners, which provided an additional $5 million in coverage available upon exhaustion of the primary professional-liability insurance policy limits.

Specifically, Auto-Owners' commercial umbrella policy included an endorsement that provided "claims-made coverage"[2] for any "incident" that occurred between June 27, 2019 and June 27, 2020. The endorsement defined an "incident" as follows:

> I. Incident means any negligent act, error, or omission or breach of duty of the insured or a person whose acts, errors or omissions the insured is legally liable. When the scheduled underlying insurance shown in the Declarations applies on a claims-made basis, coverage under the policy applies only if a claim for damages is first made against the insured during the policy term shown in the Declarations. Coverage does not apply to damages:
>
> > 1. Which take place before [June 27, 2019]; or
> >
> > 2. Which occur after [June 27, 2020].

---

[1] The underlying action has been stayed pending the outcome of Auto-Owners' declaratory-judgment action.

[2] A claims-made policy generally "is one in which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is made against the insurer during the policy period." *St Paul Fire & Marine Ins Co v American Home Assurance Co*, 444 Mich 560, 568; 514 NW2d 113 (1994). On the other hand, an occurrence policy generally "is one in which indemnity is provided no matter when the claim is brought for the misdeed complained of, providing it occurred during the policy period." *Id*. at 569 (quotation marks and citation omitted).

All claims for damages arising out of the same negligent act, error or omission or interrelated negligent acts, errors, or omissions will be deemed to have been made at the time the first of those claims is made against any insured. [(Emphasis omitted).].

The endorsement further provided, in relevant part, that Auto-Owners was obligated to provide "coverage" for sums that its insureds become legally obligated to pay "for damages caused by an incident and which are directly related to the performance of providing insurance services . . . ," provided that a claim for damages is made against its insureds during the policy term.

Westport tendered its policy limits to the Kamps defendants on the Forest defendants' behalf. Afterward, on August 30, 2021, Auto-Owners filed this action seeking a declaratory judgment that it has no contractual duty to defend the Forest defendants or indemnify the Kamps defendants on their behalf. In its complaint, Auto-Owners alleged that it was entitled to declaratory relief because the Forest defendants neither affirmatively erred nor erred by omission during the policy term at issue. The Kamps defendants countered that the Forest defendants negligently procured inadequate insurance coverage and failed to rectify their error before the sawmill fire took place during the policy term at issue. Auto-Owners and the Kamps defendants filed cross-motions for summary disposition on those respective bases.

After a hearing, the trial court denied Auto-Owners' summary disposition motion and granted summary disposition in favor of both the Kamps defendants and the Forest defendants under MCR 2.116(C)(10). It reasoned that the Forest defendants allegedly procured inadequate insurance coverage on behalf of the Kamps defendants and continuously failed to rectify their alleged errors before the sawmill fire occurred on July 2, 2019—five days after Auto-Owners' commercial umbrella policy went into effect. It therefore concluded that Auto-Owners was contractually obligated to defend the Forest defendants and, upon a finding of liability in the underlying action, indemnify the Kamps defendants on their behalf. This appeal followed.

## II. STANDARD OF REVIEW

The proper interpretation of a contract and the legal effect of contractual provisions are questions of law that we review de novo. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366; 817 NW2d 504 (2012). We likewise review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. When considering such a motion, the trial court must view all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. The trial court may only grant a motion under MCR 2.116(C)(10) if there is no genuine issue of material fact. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. *Id*.

## III. LAW AND ANALYSIS

The Forest defendants allegedly procured inadequate insurance coverage on behalf of the Kamps defendants and continuously failed to rectify their alleged errors before the sawmill fire occurred on July 2, 2019—five days after Auto-Owners' commercial umbrella policy went into

effect. Under its commercial umbrella policy, Auto-Owners was contractually obligated to defend the Forest defendants. Upon a finding of liability in the underlying action, Auto-Owners was obligated to indemnify the Kamps defendants on the Forest defendants' behalf. The trial court therefore did not err when it granted summary disposition in favor of both the Forest defendants and the Kamps defendants under MCR 2.116(C)(10).

"MCR 2.605 governs a trial court's power to enter a declaratory judgment." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017). The court rule provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). "The language in this rule is permissive, and the decision whether to grant declaratory relief is within the trial court's sound discretion." *Van Buren Charter Twp*, 319 Mich App at 545.

An insurer may utilize the summary disposition procedure "in a declaratory action to determine whether it must indemnify and provide a defense for an insured in an underlying tort action." *Allstate Ins Co v Freeman*, 432 Mich 656, 662; 443 NW2d 734 (1989). "The duty of an insurance company to provide a defense in an underlying tort action depends upon the allegations in the complaint and extends to allegations which even arguably come within the policy coverage." *Id*. (quotation marks and citation omitted). It follows, then, that "[t]he duty to defend is broader than, and not necessarily conclusive of, an insurer's duty to indemnify." *Id*.

"A negligence claim requires that a plaintiff prove the following four elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, (3) causation, and (4) damages." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009). Broadly, "an insurance agent owes a duty to procure the insurance coverage requested by an insured." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 37; 761 NW2d 151 (2008). An insurance agent generally does not owe a duty to advise an insured regarding the adequacy of their insurance coverage. *Harts v Farmers Ins Exch*, 461 Mich 1, 8; 597 NW2d 47 (1999). But such a duty may arise if an event occurs that alters the nature of their relationship. *Id*. at 10. In *Harts v Farmers Ins Exch*, our Supreme Court identified four events that give rise to a "special relationship" requiring an insurance agent to advise an insured as to the adequacy of their insurance coverage:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id*. at 10-11 (footnotes omitted).]

Here, Auto-Owners and the Kamps defendants agree (and the Forest defendants do not dispute) that the Forest defendants negligently procured inadequate insurance coverage before Auto-Owners' commercial umbrella policy went into effect on June 27, 2019. Namely, in January 2018, the Forest defendants reduced the Kamps defendants' business personal property coverage despite their request for additional coverage. And in January 2019, the Forest defendants inaccurately responded to the Kamps defendants' inquiries by advising them that they had blanket business interruption coverage for each of their facility locations when in fact the sawmill had no

such coverage. These circumstances implicate the Forest defendants' duties to procure the Kamps defendants' requested coverage and advise the Kamps defendants regarding the adequacy of their coverage. The question, then, is whether these duties were ongoing such that the Forest defendants' alleged breaches occurred after Auto-Owners' commercial umbrella policy went into effect on June 27, 2019. We conclude that they were.

The United States Court of Appeals for the Sixth Circuit addressed a similar issue in *P L Kanter Agency, Inc v Continental Cas Co*, 541 F2d 519 (CA 6, 1976).[3] There, a fire damaged a cocktail lounge in Livonia, Michigan. *Id*. at 519-520. The P. L. Kanter Insurance Agency (P. L. Kanter) committed certain errors and omissions in procuring insurance for the cocktail lounge, which resulted in the premises being inadequately and improperly insured. *Id*. at 520. P. L. Kanter had two potentially applicable professional-liability insurance policies. *Id*. The first policy was in effect when the errors and omissions first took place. *Id*. The second policy was in effect when "the actual loss itself and claim made thereon occurred . . . ." *Id*. In identifying the applicable policy, the Court applied Michigan law and explained that P. L. Kanter's errors and omissions "were not traceable to merely a single act or acts . . . but instead were continuing omissions which existed immediately prior to the fire . . . ." *Id*. at 522. It stated that P. L. Kanter had a duty to provide adequate insurance or, failing that, to promptly notify the cocktail lounge owners so that they could obtain adequate coverage elsewhere. And it reasoned that P. L. Kanter's duty "was as binding on the date of the fire as it was when the obligation was originally undertaken." *Id*. The Court accordingly concluded that P. L. Kanter's professional-liability insurance policy in effect on the date of the fire provided primary coverage for the alleged loss. *Id*. at 523.

Here, the Forest defendants were duty-bound to procure the Kamps defendants' requested coverage and accurately advise the Kamps defendants regarding the adequacy of their business interruption coverage. As the Court persuasively explained in *P L Kanter Agency, Inc*, 541 F2d at 522, those duties were as binding on the date of the sawmill fire as they were on the dates they initially arose. Auto-Owners' commercial umbrella policy provided coverage for any "incident" that occurred between June 27, 2019 and June 27, 2020. It defined incident, in part, as "any negligent act, error, or omission or breach of duty of the insured or a person whose acts, errors or omissions the insured is legally liable." "When contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v Harper Woods*, 312 Mich App 500, 508; 879 NW2d 897 (2015). Auto-Owners' commercial umbrella policy unambiguously provided coverage for alleged negligent omissions or breaches of duty that occurred between June 27, 2019 and June 27, 2020. Because the Forest defendants were duty-bound to procure the Kamps defendants' requested coverage and accurately advise the Kamps defendants regarding the adequacy of their business interruption coverage when the July 2, 2019 sawmill fire took place, Auto-Owners was contractually obligated to defend the Forest defendants and potentially indemnify the Kamps defendants on their behalf. The trial court therefore did not err when it

---

[3] Although not binding on state courts, lower federal court decisions may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

granted summary disposition in favor of both the Forest defendants and the Kamps defendants under MCR 2.116(C)(10).

We affirm.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood