In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1157

UNITED STATES FIDELITY & GUARANTY COMPANY,

Plaintiff-Appellee,

v.

HERITAGE MUTUAL INSURANCE COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 96-C-0523--Richard L. Young, Judge.

Argued September 14, 2000--Decided October 16, 2000

   Before BAUER, DIANE P. WOOD, and EVANS, Circuit
Judges.

   Evans, Circuit Judge.  Two insurance companies
are battling here over coverage growing out of a
serious accident involving a dump truck and two
automobiles. The accident caused the death of the
driver of one of the cars and injuries to the
other. Heritage Mutual Insurance Company appeals
from a decision finding that it, not United
States Fidelity and Guaranty Company, must
provide coverage for the damages.

   The driver of the dump truck, Charles Oldham,
was an employee of V&S Transport, Inc. Heritage
insured V&S with both a primary and umbrella
policy. V&S had an oral contract under which it
did hauling for Irving Materials, Inc. (IMI), the
owner of concrete manufacturing plants and sand
and gravel pits. IMI was insured by USF&G.

   After the collision, the estate of John Reeves,
who was killed in the accident, filed a lawsuit,
which Heritage settled. The injured man, John
Grabowski, filed a separate suit. Contending that
its primary policy will be exhausted by claims
other than the one Grabowski was pursuing,
Heritage looked to USF&G to step in and cover the
Grabowski suit. Heritage argues that USF&G's
policy should be paid out before it is forced to
dip into its umbrella policy. Not surprisingly,
USF&G maintains that its policy simply does not

provide coverage for Oldham or V&S--none at all. The parties presented their positions on cross-motions for summary judgment. Judge Richard L. Young in the district court granted USF&G's motion, and we review that decision de novo. Kincaid v. Vail, 969 F.2d 594 (7th Cir. 1992).

The USF&G policy states:

A. COVERAGE

 * * *

1. WHO IS AN INSURED

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto."

A basic issue, then, is whether IMI "hired" or "borrowed" the dump truck. If it did not, there is no coverage under the policy. Heritage thinks it is clear that the truck was "hired"; USF&G thinks it is just as clear that it was not hired. Instead, USF&G says that V&S was an independent contractor providing services to IMI.
   The USF&G policy does not define what "hire" means, but that is not required. Jones v. Western Reserve Group, 699 N.E.2d 711 (Ind. App. 1998). And under the law of Indiana, which controls this case, the failure to define a term does not render it ambiguous. American Family Life Assurance Co. v. Russell, 700 N.E.2d 1174 (Ind. App. 1998). It does, however, mean that we must look to the ordinary meaning of the word as it is applied to the facts of the case. Even were we to find the word ambiguous, we need not construe its meaning in favor of Heritage because it has never paid "a penny's premium to the insurer." Harden v. Monroe Guar. Ins. Co., 626 N.E.2d 814 n.2 (Ind. App. 1993). Furthermore, because the dispute is between insurance companies, we are not required to construe the USF&G policy strictly in favor of Heritage but rather must determine the general intent of the agreement from a neutral perspective. Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 291 N.E.2d 897 (Ind. 1973).

On the issue whether the truck was hired, or whether V&S was an independent contractor providing services to IMI, Heritage's contention is that the amount of control IMI exercised over the hauling requires us to find that the trucks (particularly the one involved in the accident) were hired.

Heritage relies on factors which show that V&S had been hauling for IMI pursuant to an oral agreement since 1983. Each workday V&S's employee, Oldham, picked up his truck from V&S and reported to IMI to be dispatched to various jobs. IMI could contact Oldham on a two-way radio and direct him to particular locations. Oldham's workday was as long as IMI had loads for him to haul. In addition, V&S drivers were required to be union members in order to haul for IMI, and IMI retained the right to tell V&S not to send a particular driver to the IMI plant. V&S also operated a fuel facility on the premises of the IMI gravel pit.

USF&G, on the other hand, looks to other factors. It emphasizes that IMI used services of hauling companies to transport its product and dealt with all of them on an at-will basis with no formal contract. On a typical day, IMI would call V&S and request a number of trucks, but not a specific truck, based on its hauling needs that day; if V&S was unable to supply the trucks, IMI called a different company. The truck Oldham was driving was owned by V&S and had a V&S decal on its door. V&S provided the maintenance and the fuel for the trucks. IMI did not control how many hours a V&S driver worked, except to the extent that it would tell Oldham when there was no more hauling to be done. In addition, while Oldham regularly delivered materials for IMI, he also hauled for other contractors at the instruction of V&S. IMI did not pay V&S's drivers but paid V&S for its services. V&S, in turn, paid its drivers. V&S also provided its drivers with insurance benefits, withheld taxes, and paid social security on their behalf. All complaints from IMI customers regarding V&S drivers were referred to V&S.

We must determine what these facts add up to. Although we are not the first court to determine the scope of a hired-automobile clause, the fact-specific nature of the inquiry makes prior cases of limited help, to say nothing of the fact that they seem to come down firmly on both sides of the issue. For example, in Kresse v. Home Insurance Co., 765 F.2d 753 (8th Cir. 1985), a dump truck hit a train. Clarence Kresse, the owner of the truck, claimed that he was an insured under a policy issued by the Home Insurance Company to Cass County, North Dakota. For simplicity's sake, we will note that Kresse is in a similar position to V&S in the present case and Cass County is similar to IMI. The issue was whether the Kresse truck was a hired vehicle. The factors which caused the court to find that, in fact, the truck was a hired vehicle included the following: the relationship of the parties

was pursuant to a letter from the county in which the trucks were referred to as "hired trucks" and the drivers as "hired truck drivers." At the beginning of the season, a truck's hauling capacity was measured by the county and Kresse was thereafter required to use that specific truck for the entire season. The county loaded the trucks, determined the route the trucks traveled, and had the right to dismiss any driver that deviated from the prescribed route. The trucks had specified hours of operation which were determined by the county. Not surprisingly, on these facts, which make a much stronger case for coverage than the one before us, the Court of Appeals for the Eighth Circuit called the Kresse truck a hired vehicle covered under the Home policy.

Some years later, in Chicago Insurance Co. v. Farm Bureau Mutual Insurance Co., 929 F.2d 372 (1991), that same court found a trucking company to be an independent contractor not covered under the hired vehicle clause; obviously the facts were different. Junior Anderson Trucking, Inc. had a contract for hauling with the El Campo, Texas, Farmer's Cooperative. Unable to provide all the trucks needed, Anderson in turn contacted other trucking firms for help, including a trucking firm called Locust Farms. Locust Farms had an umbrella policy with Farm Bureau Mutual Insurance and Anderson was insured by Chicago Insurance. Farm Bureau contended that under its hired automobile provision, the Chicago policy covered the Locust Farm truck involved in a fatal accident. The court found that the provision did not apply because Locust Farms was an independent contractor. The facts showed that Locust Farms chose how many and which trucks and drivers to send to El Campo; it maintained the trucks and carried insurance on them. The driver was a Locust Farms employee, and Locust Farms maintained his workers' compensation insurance. The Locust Farms drivers could chose their own routes for deliveries. Thus, Locust Farms was not an insured under the Chicago policy.

Another example is Toops v. Gulf Coast Marine Inc., 72 F.3d 483 (5th Cir. 1996), in which the court said that a distinction must be made between hiring a company that provides transportation and hiring a truck. The court required that for a vehicle to be a hired vehicle, a separate contract must exist and the vehicle must be under the named insured's exclusive control. Relevant inquiries to determine whether a truck is under the possession or control of an insured are whether the insured furnished gas or oil and maintained the trucks, required the trucks to be of a particular size, selected individual drivers, had the ability to

fire the drivers, and did the loading or unloading itself.

Indiana cases, while not directly on point, indicate that, like the courts in our three examples, Indiana would look to matters of control in assessing whether a vehicle is hired or borrowed. For example, in Protective Insurance Co. v. Coca-Cola Bottling Co., 423 N.E.2d 656, 660 (Ind. App. 1981), Cox Motor Transport had a contract with Coca-Cola to transport Coke trailers to various destinations. An accident occurred during the unloading of a tractor trailer at one of the sites. The hired automobile clause in the policy issued to Cox provided coverage for injuries incurred during loading or unloading only if the entity claiming coverage under the hired automobile provision, in this case Coca-Cola, was a lessee or borrower of the vehicle. In language instructive to us, the court said that to be a borrower, a person must have possession of the vehicle, possession connoting the right to exercise dominion and control over the vehicle. Liberty Mut. Ins. Co. v. American Employers Ins. Co., (Tex. 1977) 556 S.W.2d at 244. General supervision or even the actual performance of loading or unloading operations will not make one a borrower of the vehicle involved; there must be evidence of possession.
The fact that a Coca-Cola dispatcher instructed the driver of the truck where to park was seen as evidence of control, but it was insufficient to make the company a borrower as a matter of law, and summary judgment for Coca-Cola was reversed. See also Protective Ins. Co. v. Coca-Cola Bottling Co., 467 N.E.2d (Ind. App. 1984), and Indiana Ins. Co. v. O.K. Transp., Inc., 587 N.E.2d 129 (Ind. App. 1992).

Although, because of the fact-specific nature of the inquiry, the cases do not answer our question for us, they reinforce our independent conclusion that the truck Oldham was driving was not a hired vehicle; rather, V&S was an independent contractor. V&S maintained its trucks and provided gas for them. It paid the drivers for the amount of material they hauled and paid for their benefits. The fact that IMI did the dispatching seems more a matter of efficiency than of control. IMI did not dictate the routes the drivers must use nor did it maintain exclusive control over them. So these facts, we think, lead us to the same conclusion reached by Judge Young: Heritage must foot the bill--USF&G is off the hook.

The decision of the district court is

AFFIRMED.