NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0415n.06
Filed: July 10, 2008

No. 07-1296

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AMERICAN AUTOMOBILE INSURANCE CO. & AMERICAN INSURANCE CO., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| TRANSPORTATION INSURANCE CO., | ) ) | **O P I N I O N** |
| Defendant-Appellee. | ) | |

BEFORE:    DAUGHTREY and McKEAGUE, Circuit Judges; GWIN, District Judge.[*]

    **McKEAGUE, Circuit Judge.**  This case involves a battle between two insurance companies over what portion of a $3.75 million wrongful death settlement each of them should be required to pay.  Plaintiffs, American Automobile Insurance Co. and American Insurance Co. (collectively referred to as "American"), argue that the district court erred in holding that Defendant, Transportation Insurance Co. ("Transportation"), was only required to contribute $190,000 towards the $3.75 million settlement.  For the reasons set forth below, we **AFFIRM** in part and **REVERSE** in part.

**I.  BACKGROUND**

**A.  Historical Facts**

_____

    [*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Underlying the insurance dispute that confronts us today is a tractor-trailer versus automobile accident that claimed the life of Mr. Steven Reynolds on August 8, 2001. The tractor involved in the accident was owned by Hazen Transport, Inc. ("Hazen") and operated by its employee, Mr. Robert Isaac ("Isaac"). The trailer, which was owned by Mid-Lakes Recycling, Inc. ("Mid-Lakes"), was being hauled by Hazen's tractor pursuant to an agreement under which Hazen's tractors would haul Mid-Lakes' trailers to and from various facilities. Hazen was insured by American while Mid-Lakes was insured by Transportation. Both provided coverage for Isaac.

As a result of the accident, Reynolds's estate filed a wrongful death action against Hazen and Isaac; neither Mid-Lakes nor Transportation were named as parties in that suit. The estate alleged that Hazen negligently maintained the tractor's brakes, and Isaac negligently operated the tractor. American settled the case on behalf of both Hazen and Isaac for a total of $3.75 million. On August 4, 2003, American filed this diversity action against Transportation in the United States District Court for the Eastern District of Michigan seeking contribution towards the $3.75 million settlement. According to American—although neither Mid-Lakes nor Transportation were parties to the wrongful death action—the policies that Transportation issued to Mid-Lakes provided coverage for the negligence of both Hazen and Isaac. Thus, American believes Transportation should be required to pay a significant portion of the $3.75 million settlement.

**B. The Dispute**

Four different insurance policies are involved in this case: (1) American's $1 million primary policy; (2) Transportation's $1 million primary policy; (3) American's $10 million umbrella policy;

and (4) Transportation's $1 million umbrella policy.[2]  In terms of the priority of the four policies, it is undisputed that American's $1 million primary policy is at the front of the line and should be exhausted first.  There is also no dispute that Transportation's $1 million primary policy is second in line.  But, there is disagreement regarding the portion of its $1 million policy maximum that Transportation should be required to contribute towards the $3.75 million settlement.

With regard to its $1 million primary policy, Transportation agrees that it should contribute some money towards the settlement based on the language of the policy that it wrote for Mid-Lakes. The dispute centers on who is covered by Transportation and how much money Transportation must contribute to the settlement.  According to Transportation, its policy covered Hazen only to the extent that Hazen is vicariously liable for the negligence of the driver, Isaac, who Transportation agrees was covered by its policy.  On the other hand, American argues that, in addition to its vicarious liability for Isaac's negligence, Transportation insured Hazen for Hazen's own negligent maintenance of its tractor.  Looking beyond the primary policies, the parties also disagree regarding the application of their respective umbrella policies. American argues that Transportation's umbrella policy applies first.  Unsurprisingly, Transportation thinks the inverse is true; American's umbrella policy applies first and its own umbrella policy applies second.

## C.  The District Court's Decisions

---

[2]Although the complaint indicates that Transportation's umbrella policy has a $3 million limit, it appears from the language of the policy that the umbrella policy's limit is actually $1 million.  *See* JA at 682.

In a decision dated February 15, 2005, the district court held that Transportation insured Hazen only to the extent that Hazen was vicariously liable for the negligence of Isaac. In reaching this decision, the district court stated: "Neither party disputes the facts that (a) Hazen owns the tractor; (b) the tractor is a 'covered auto' under the Transportation policy; or (c) Mid-Lakes hired Hazen for its tractor." Dist. Ct. Op. at 7 (Feb. 15, 2005). Based on these apparent concessions by the parties, the district court determined that the tractor qualified for the exception found in Section II, ¶1.b(1) of the Transportation primary policy for "hired" vehicles and, therefore, Transportation did not cover Hazen for its own negligence in maintaining the tractor. Because it concluded that there existed a genuine issue of material fact regarding the extent of Isaac's fault for the accident, the district court's February 15, 2005, decision did not specify the portion of the $3.75 million settlement that Transportation was required to contribute. Regarding the priority of the umbrella policies, the district court held that American's umbrella policy applies first.

American later filed a motion for summary judgment regarding the scope of the settlement agreement. In a ruling dated November 10, 2005, the district court held that the settlement agreement was silent on the allocation of liability between Hazen and Isaac. Following this ruling, both parties moved for summary judgment regarding the allocation of fault between Hazen and Isaac. Believing that genuine issues of material fact remained regarding the extent to which Hazen and Isaac were liable for the fatal accident, the district court denied both parties' motions. To avoid a trial on the apportionment of liability, American and Transportation entered into a stipulation of fault. According to the stipulation, Isaac was 19% liable for the accident, and Hazen was 81% liable. Because the stipulation resolved the remaining factual issue, the district court issued an opinion on

January 16, 2007, ordering Transportation to contribute $190,000 towards the settlement. The district court arrived at $190,000 by calculating 19% of Transportation's $1 million policy limit. The district court's decision rendered American responsible for paying the remaining $3.56 million. American timely appealed.

## II. ANALYSIS

### A. Standard of Review

We review a district court decision granting summary judgment *de novo*. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 2100 (2007). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Discussion

In this case, American argues that the district court committed several errors. First, it submits that the district court incorrectly determined that Transportation's policy did not provide coverage for Hazen's own negligence. Second, American argues that, even if Transportation only covered Hazen to the extent that it was vicariously liable for Isaac's negligence, the district court erred in concluding that it was necessary to apportion fault between Hazen and Isaac because both are jointly liable for the entire $3.75 million settlement. Third, American argues that if it was necessary to apportion fault, the district court erroneously held that Transportation was only required to contribute $190,000 towards the $3.75 million settlement. Fourth, American argues that the district court

erroneously held that American's umbrella policy applied before Transportation's umbrella policy. We consider each of these arguments in turn.

### 1. Transportation's Liability for Hazen's Own Negligence

According to American, Transportation's primary policy covers Hazen for Hazen's negligent maintenance of its tractor. This argument finds its genesis in the language of Section II, ¶1.b of the primary policy that Transportation issued to Mid-Lakes. Section II, ¶ 1.b defines "An Insured" to include: "Anyone else while using with [Mid-Lakes] permission a covered 'auto' you own, hire or borrow . . . ." JA at 595. An exception to this provision is found in Section II, ¶1.b(1), which states that Transportation's coverage does not extend to "[t]he owner or anyone else from whom you hire or borrow a covered 'auto.'" JA at 595. Thus, the determination of whether Transportation covers Hazen for its own negligence boils down to whether Hazen's tractor was "hire[d] or borrowe[d]" by Mid-Lakes. If, as American contends, Mid-Lakes did not hire Hazen's tractor, then the exception found in ¶1.b(1) does not apply and Transportation insures Hazen for its own negligence. On the other hand, if Transportation is correct that Mid-Lakes did hire the tractor from Hazen, then the exception found in ¶1.b(1) applies and Transportation provides no coverage for Hazen's own negligence.

We decline to address the merits of American's assertion that Hazen's tractor was not hired by Mid-Lakes because this argument was not presented to the district court. As we have repeatedly recognized, "the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (finding that an issue was waived for failure to raise it below even though both parties briefed the issue on

appeal). This rule reflects the fact that our function as an appellate court is "to review the case presented to the district court, rather than a better case fashioned after an unfavorable order." *Id*. (internal quotations and alterations omitted). We rarely depart from this general rule, and will do so only in exceptional cases and those where its application would result in an obvious miscarriage of justice. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

In this case, the district court stated: "*Neither party disputes* the facts that (a) Hazen owns the tractor; (b) the tractor is a 'covered auto' under the Transportation policy; or (c) *Mid-Lakes hired Hazen* for its tractor. Thus, because of the exemption listed above [¶1.b(1)], Hazen is not an "insured" under the above listed clause." Dist. Ct. Op. at 7 (Feb. 15, 2005) (emphases added). It is apparent from this portion of the opinion that American failed to present the district court with the argument that this case falls outside of the exception found in ¶1.b(1) because Mid-Lakes did not hire Hazen's tractor. Having independently reviewed the district court record, we have been unable to locate any motions or other documents advocating the position that American advances today regarding the language of ¶1.b(1). While on appeal American urges this court to follow the Seventh Circuit's decision in *USF&G Co. v. Heritage Mutual Insurance Company*, 230 F.3d 331 (7th Cir. 2000), one can search American's lower court submissions in vain for any citation to *USF&G* or any other case involving the "hired auto" issue. Furthermore, American failed to file a motion for reconsideration with the district court, which is what we would have expected it to do if the district court's decision misstated American's position or if the district court misunderstood the nature of the arguments raised. Because American failed to argue below that Hazen's tractor was not hired by Mid-Lakes such that the ¶1.b(1) exception does not apply, this argument has been waived. There

is nothing exceptional about the circumstances in this case that would necessitate our departure from the general rule that issues not raised below are waived.

### 2. Joint Liability Under the Settlement Agreement

Because we have concluded that American waived its argument regarding the applicability of the exception found in ¶1.b(1), it is necessary to consider American's various alternative arguments. In its first alternative argument, American argues that no allocation of fault was necessary by the district court because Isaac is jointly liable for the entire $3.75 million settlement. According to American, Isaac and Hazen bear equal responsibility for payment of the entire settlement amount. This argument fails. There is no language in the settlement agreement or other evidence in the record indicating that Isaac and Hazen share a joint obligation to pay the entire $3.75 million. Therefore, we agree with the district court that Isaac is not jointly obligated under the settlement to pay the entire $3.75 million.

### 3. Allocation of Fault Between Hazen and Isaac

In its second alternative argument, American argues that the district court erred in holding that Transportation was only required to contribute $190,000 towards the $3.75 million settlement. According to American, the district court arrived at the $190,000 figure by incorrectly applying Isaac's stipulated fault of 19% to Transportation's $1 million policy limit instead of to the overall settlement amount of $3.75 million. Thus, American believes that Transportation should be required to pay $712,500—19% of $3.75 million—because that amount represents the actual extent of Isaac's liability for the underlying accident. Transportation counters by arguing that the district court correctly arrived at $190,000 by applying the 19% to Transportation's $1 million policy limit

because that was the only policy in dispute. We agree with American that the district court should have applied the 19% stipulation of fault to the entire $3.75 million settlement instead of to Transportation's $1 million policy limit.

The policy that Transportation issued to Mid-Lakes defines an insured to include: "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." JA at 595. Transportation concedes that this clause provides coverage to Hazen "to the extent" of its vicarious liability for the negligence of Isaac—who qualifies as an insured under a separate provision of Transportation's policy. Because the settlement agreement does not specify the extent of Isaac's liability, the parties stipulated below that he was 19% responsible for the fatal accident. The question before this court is to what figure that 19% applies. According to the language of the stipulation, Isaac was 19% liable for the "underlying collision and injury." Because the total amount of damages resulting from the accident was $3.75 million, the extent of Isaac's liability is 19% of $3.75 million, which amounts to $712,500. In other words, because Isaac was 19% liable for the accident, he should bear 19% of the responsibility for the damages caused by the accident.

Rather than applying the 19% to the overall amount of damages resulting from the accident, the district court erroneously chose to apply the 19% to Transportation's $1 million policy limit. The amount of Transportation's policy limit does not provide the proper framework for determining the extent of Isaac's liability for the accident; it merely determines how much of the insured's liability will be borne by the insurer. Isaac's liability should have been calculated with reference to the damage he caused, not the extent of insurance coverage available for his conduct. Per the parties' stipulation, the extent of Isaac's liability for the collision and injury was 19%. The total amount of

damages resulting from the collision and injury was $3.75 million. Thus, responsibility for $712,500 of the total damages rests with Isaac. Hazen is, therefore, vicariously liable for the $712,500 in damage caused by the negligence of its driver, Isaac. Because Transportation insured Hazen to the extent of Hazen's vicarious liability for the conduct of Isaac, Transportation should contribute $712,500 towards the total settlement.

Based on our conclusion that Transportation should contribute $712,500 towards the settlement, $3,037,500 remains to be paid. After American's $1 million primary policy is exhausted, $2,037,500 is left unpaid. Therefore, it is necessary to consider the umbrella policies.

### 4. The Umbrella Policies

Both American and Transportation have umbrella policies, but the parties dispute whose umbrella policy applies first. The dispute revolves around the language of the "other insurance" clauses that are found in the two policies. An other insurance clause is a provision inserted in insurance contracts "to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St. Paul Fire & Marine Ins. Co. v. Am. Home Assurance Co.*, 514 N.W.2d 113, 115 (Mich. 1994). Generally, other insurance clauses fall into three categories: (1) pro-rata clauses; (2) escape or no-liability clauses; and (3) excess clauses. *Id*. This case involves the relationship between a pro-rata clause and an excess clause.

According to the Michigan Supreme Court, a pro-rata clause "purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event." *Id*. Typically, a pro-rata clause is identified by language that "creates a formula for establishing the liability of an insurer when other, collectible insurance exists on a proportionate basis." *Id*. at 116. An excess clause

"limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." *Id*. at 115. Typically, an excess clause is identified by language indicating that "the policy will provide coverage only for liability above the maximum coverage of the primary policy or policies." *Id*. at 116 (internal quotations omitted). When two insurance policies are involved, both of which contain other insurance clauses, Michigan law provides that a policy with a pro-rata clause will pay before a policy with an excess clause. *Id*. at 119-21 (adopting the majority view that a policy with an excess clause is secondary to a policy with a pro-rata clause).

In this case, Transportation's umbrella policy contains an other insurance clause, which states: "Whenever you are covered by other: (a) Primary (b) Excess; or (c) Excess-contingent insurance not scheduled on this policy as 'scheduled underlying insurance,' this policy shall apply only *in excess of*, and will not contribute with, such other insurance." JA at 694 (emphasis added). As the district court correctly held, the italicized language makes clear that Transportation's other insurance clause is an excess clause. American's umbrella policy also contains an other insurance clause, which states:

> When both this insurance and Other Insurance apply to the loss on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision as follows:
>> . . . .
>> b. Contribution of Limits
>> If any of such Other Insurance does not provide for contribution by equal shares, we shall not be liable for a *greater proportion* of such loss than the applicable Limit of Insurance under this policy for such loss bears to the total applicable limit of insurance of all valid and collectible insurance against such loss.

JA at 665.[3]  The district court correctly recognized that American's other insurance clause is of the pro-rata variety.  Thus, we are confronted with a conflict between Transportation's excess clause and American's pro-rata clause.  Under Michigan law, a pro-rata clause has priority over an excess clause.

In an effort to avoid the conclusion that its umbrella policy applies first because it contains a pro-rata clause, American argues that Transportation's other insurance clause has not been triggered in this case.  American takes the position that Transportation's other insurance clause is inapplicable because the word "you" in the clause refers only to the named insured, Mid-Lakes, and not additional insureds such as Hazen and Isaac.  Essentially, American believes that Transportation's other insurance clause only applies where the insured seeking coverage under the policy is the named insured.  Thus, American posits that, rather than a case involving a conflict between a pro-rata clause and an excess clause, this case involves an umbrella policy with an other insurance clause—American's policy—and a policy with no applicable other insurance clause—Transportation's policy.

American's argument fails.  We hold that Transportation's other insurance clause applies here for the reasons set forth in the district court's opinion of February 15, 2005.  Accordingly, American's umbrella policy applies first because it contains a pro-rata other insurance clause while Transportation's umbrella policy contains an excess other insurance clause.  Because American's

---

[3]This language is contained in a Michigan Amendatory to American's umbrella policy, which modifies the other insurance clause found in the original umbrella policy.

umbrella policy is sufficient to cover the remaining balance, it is not necessary for Transportation to contribute from its umbrella policy.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision that Transportation's policy provides no coverage for Hazen's own negligence, as well as its decision that American's umbrella policy applies before Transportation's umbrella policy.  We **REVERSE** the district court's decision that Transportation was liable for only $190,000 of the $3.75 million settlement, and we **REMAND** this matter for further proceedings consistent with this opinion.