*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDI EPLER as Personal Representative of the
Estate of DENNIS PIERSON, Deceased, LLOYD
PIERSON, SHIRLEY VANVLEET as Personal
Representative of the Estate of GERALD
VANVLEET, Deceased, and THOMAS REID,

        Plaintiffs-Appellants,

v

AMANDA MARIE FORCE and HOME-OWNERS
INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
September 22, 2022

No. 357406
Eaton Circuit Court
LC No. 20-000473-NI

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs appeal as of right from a consent judgment entered in their favor following the
trial court's opinion and order granting defendant Home-Owners Insurance Company's motion for
partial summary disposition, concluding that only two underinsured motorist (UIM) policies were
applicable to the claims of the four insured plaintiffs. We reverse in part, affirm in part, and remand
for proceedings consistent with this opinion.

## I. BACKGROUND FACTS

On May 24, 2020, at about 12:05 a.m., plaintiffs were involved in a motor vehicle accident
on northbound I-69 in Marshall Township, Calhoun County. Plaintiff Lloyd Pierson (Lloyd) was
the driver of a Chevrolet Colorado pickup truck, and his passengers were Dennis Pierson (Dennis)
and Gerald VanVleet (VanVleet).[1] Lloyd's vehicle was towing a Dodge Ram pickup truck and in
the driver's seat of the Dodge Ram was plaintiff Thomas Reid (Reid). At that time, also traveling

---

[1] Dennis and VanVleet are deceased and so the personal representatives of their estates are
plaintiffs in this case but, for clarity purposes, we refer to them as "Dennis" and "VanVleet."

-1-

northbound on I-69, was defendant Amanda Marie Force, who was driving a Chevrolet Silverado pickup truck that was towing a horse trailer. Force's Silverado pickup truck struck the rear of the Dodge Ram pickup truck, which then struck the rear of the Chevrolet Colorado pickup truck. Both the Dodge Ram and the Chevrolet Colorado pickup trucks overturned in the median, killing Dennis and seriously injuring Lloyd and Reid, as well as VanVleet who subsequently died.

On June 22, 2020, plaintiffs filed their third-party negligence action against defendant Force. On August 13, 2020, plaintiffs filed their amended complaint, adding claims against defendant Home-Owners Insurance Company (Home-Owners). In Count II of the amended complaint, it was averred that Dennis was insured by Home-Owners and his automobile insurance included UIM coverage with a limit of liability of $250,000 per person and $500,000 per occurrence. And because Force was underinsured at the time of the accident—with a limit of liability of $20,000 per person and $40,000 per accident—Dennis's estate is entitled to recover at least $250,000 from Home-Owners under that policy. In Count III of the complaint, Lloyd averred that he was insured by Home-Owners and his automobile insurance included UIM coverage with a limit of liability of $250,000 per person and $500,000 per occurrence. And because Force was underinsured at the time of the accident, he is entitled to recover at least $250,000 from Home-Owners under that policy. In Count IV of the complaint, it was averred that VanVleet was insured by Home-Owners and his automobile insurance included UIM coverage with a limit of liability of $50,000 per person and $100,000 per occurrence. And because Force was underinsured at the time of the accident, he is entitled to recover at least $50,000 from Home-Owners under that policy. In Count V of the complaint, Reid averred that he was insured by Home-Owners and his automobile insurance included UIM coverage with a limit of liability of $100,000 per person and $300,000 per occurrence. And because Force was underinsured at the time of the accident, he is entitled to recover at least $100,000 from Home-Owners under that policy.

On January 14, 2021, Home-Owners filed a motion for partial summary disposition under MCR 2.116(C)(10), challenging the UIM policies that were available to provide benefits to plaintiffs. In particular, Home-Owners argued that because Dennis and VanVleet were passengers in Lloyd's vehicle at the time of the accident, Dennis and VanVleet are entitled only to receive UIM benefits through Lloyd's policy—not through their own UIM policies. Lloyd's underinsured motorist occurrence limit is $500,000—which is reduced by defendant Force's $40,000 occurrence limit—for a total of $460,000. Accordingly, Home-Owners argued, the policy limit of $460,000 applied to the claims of Lloyd, Dennis, and VanVleet. However, because Reid was not an occupant of Lloyd's vehicle, Reid is entitled to UIM benefits through Reid's own policy, as well though the policy issued by Farmers Insurance Company to Devaron Gentry, the owner of the Dodge Ram that Reid was occupying. The Home-Owners UIM policy limit with respect to Reid is $100,000— which is reduced by defendant Force's $20,000 per person limit—for a total of $80,000. Reid was entitled to UIM coverage through the Farmers insurance policy, which had to be pro-rated, so that, in total, Reid was entitled to recover $66,666.67 (or 5/6) from Home-Owners and $13,333.33 (or 1/6) from Farmers Insurance Company. Accordingly, Home-Owners requested the trial court to issue an order declaring that the policy limit of $460,000 applied to the claims of Lloyd, Dennis, and VanVleet, and that Reid was entitled to $66,666.67 for his damages incurred as a result of the accident.

On January 26, 2021, plaintiffs filed a cross-motion for partial summary disposition under MCR 2.116(C)(10), arguing that each plaintiff had his own UIM policy issued by Home-Owners

which applied to each plaintiff's individual claim. In particular, Lloyd's UIM policy limits were $250,000 per person and $500,000 per occurrence which would be reduced by defendant Force's policy limits of $20,000 per person and $40,000 per occurrence. Therefore, Lloyd would be entitled to $230,000, and Dennis and VanVleet would split the remaining $230,000 from Lloyd's coverage. Dennis also had an UIM policy with coverage limits of $250,000 per person and $500,000 per occurrence so Dennis is entitled to an additional $250,000. VanVleet had his own UIM policy with coverage limits of $50,000 per person and $100,000 per occurrence so he is entitled to an additional $50,000. Plaintiffs argued that Paragraph 5 of their insurance policies, which is titled "Other Underinsured Motorist Coverage," states: "The coverage extended to automobiles you do not own will be excess over any other insurance available to you." Thus, plaintiffs argued, this provision clearly and unambiguously states that Dennis and VanVleet are entitled to their policy limits over and above the amounts they are entitled to under Lloyd's UIM policy. And Reid had an UIM policy with coverage limits of $100,000 per person and $300,000 per occurrence so he is entitled to receive $100,000 because Force's vehicle was not "underinsured" as defined by the terms of the Farmers insurance policy issued to Gentry. Accordingly, plaintiffs requested the trial court to issue an order declaring that Home-Owners was liable for underinsured motorist coverage in the amount of $860,000 as set forth in the four policies applicable to plaintiffs.

On February 17, 2021, plaintiffs filed a response to Home-Owners' motion for partial summary disposition and relied on their motion for partial summary disposition, but further argued that Gentry's underinsured motorist coverage did not apply as to Reid. A provision in Gentry's policy stated that coverage would be reduced by all sums payable by the legally responsible party—who, in this case, was Force. But Force's bodily injury limits are identical to Gentry's underinsured motorist coverage limits so they offset completely, causing Gentry's underinsured policy to be inapplicable with regard to Reid.

On February 17, 2021, Home-Owners filed a response to plaintiffs' motion for partial summary disposition, arguing that Lloyd, Dennis, and VanVleet were all occupants of the Chevrolet Colorado owned by Lloyd, and thus, these three would claim UIM benefits under Lloyd's UIM policy for a total of $500,000 (the occurrence limit), reduced by the $40,000 occurrence limit of Force's State Farm policy. And because the UIM policy Dennis procured had the same occurrence limit as Lloyd's UIM policy, he was not entitled to "excess" coverage under his own UIM policy. Likewise, VanVleet had a UIM policy with an occurrence limit of $100,000, which was less than the occurrence limit of Lloyd's UIM policy so VanVleet was not entitled to "excess" coverage under his own UIM policy. Home-Owners argued that plaintiffs efforts to stack their policy limits was contrary to the antistacking contractual provision and must be rejected. Further, Reid was covered by Gentry's UIM policy from Farmers Insurance (with limits of $20,000 per person and $40,000 per occurrence) in pro rata proportion with his own UIM policy which has limits of $100,000 per person and $300,000 per occurrence, reduced by Force's State Farm per person limit of $20,000. Thus, Reid was entitled to an award of $66,666.67 from Home-Owners as its pro-rata share of $80,000 in UIM benefits to which he was entitled.

On February 24, 2021, the trial court held oral argument on the cross-motions and the parties argued consistently with their briefs. The matter was taken under advisement.

On March 5, 2021, the trial court issued its opinion and order granting Home-Owners' motion for partial summary disposition under MCR 2.116(C)(10), and denying plaintiffs' motion for partial summary disposition under MCR 2.116(C)(10). The trial court first addressed the claims asserted by Lloyd, Dennis, and VanVleet. The court concluded that based on the language in Paragraphs 2, 4, and 5 of the UIM policies—and consistent with the holding in *Wilkie v Auto-Owners Ins Co*, 469 Mich 41; 664 NW2d 776 (2003)—these plaintiffs were limited to collecting benefits from Lloyd's policy only, which would be $500,000 minus the $40,000 from Force's policy for a total of $460,000. Next, the trial court addressed the claim asserted by Reid and concluded that any benefits he was entitled to under his UIM policy must be reduced by the $20,000 from Force's policy. And further, because Farmers Insurance Company agreed to pay its pro rata share of the damages, the pro rata issue was moot.

On May 19, 2021, the trial court entered a stipulation and consent judgment whereby Lloyd was awarded damages in the amount of $209,090.91, Dennis was awarded $209,090.91, and VanVleet was awarded $41,818.18, for a total of $460,000 in damages from Home-Owners. Further, Reid was awarded damages in the amount of $66,666.67 from Home-Owners, and also received $13,333.33 from Farmers Insurance Company. But plaintiffs reserved their rights to appeal. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition made under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The documentary evidence submitted by the parties is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This case involves issues regarding the proper interpretation of contracts, which are reviewed de novo as questions of law. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). More specifically, UIM coverage is not mandated by statute, and therefore, "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 19; 592 NW2d 379 (1998). Accordingly, judicial construction is not permitted with regard to unambiguous contracts; the plain and ordinary meaning of the language controls and the contract must be enforced as written as reflective of the parties' intent as a matter of law. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008); *Rory v Continental Ins Co*, 473 Mich 457, 464, 468; 703 NW2d 23 (2005).

## III. ANALYSIS

Plaintiffs first argue that the trial court erred by not permitting Dennis and VanVleet to recover their policy limits of $250,000 and $50,000, respectively, from their own UIM policies as excess coverage over and above the amounts they are entitled to under Lloyd's UIM policy. We agree.

It is undisputed by the parties that no material differences exist in any of the Home-Owners UIM policies at issue in this case. The relevant provisions of the UIM policies are as follows:

**2.     COVERAGE**

a. We will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of the underinsured automobile because of bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy.

b. This coverage is extended to you, if an individual, as follows:

(1) We will pay compensatory damages, including but not limited to loss of consortium, you are legally entitled to recover from the owner or operator of an underinsured automobile because of bodily injury you sustain:

(a) when you are not occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy; or

(b) while occupying an automobile you do not own which is not covered by SECTION II – LIABILITY COVERAGE of the policy.

* * *

**4.     LIMIT OF LIABILITY**

a. Our Limit of Liability for Underinsured Motorist Coverage shall not exceed the lowest of:

(1) the amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all bodily injury liability bonds and policies available to the owner or operator of the underinsured automobile; or

(2) the amount by which compensatory damages, including but not limited to loss of consortium, because of bodily injury exceed the total limits of those bodily injury liability bonds and policies.

b. The Limit of Liability is not increased because of the number of:

(1) automobiles shown or premiums charged in the Declaration;

(2) claims made or suits brought;

(3) persons injured; or

(4) automobiles involved in the occurrence.

c. The amount we pay will be reduced by any amounts paid or payable for the same bodily injury:

> (1) under SECTION II – LIABILITY COVERAGE of the policy;

> (2) under any workers compensation or similar law; or

> (3) by or on behalf of any person or organization who may be legally responsible for the bodily injury.

**5.        OTHER UNDERINSURED MOTORIST INSURANCE**

If there is other Underinsured Motorist Coverage which applies, we will pay our share of the compensatory damages, including but not limited to loss of consortium.  Our share will be the ratio of our limit of liability to the total of all limits which apply.  Total damages payable for one occurrence shall be considered not to exceed the limit of liability of the applicable policy that has the highest limit of liability.

The coverage extended to automobiles you do not own will be excess over any other insurance available to you.

The parties do not dispute that Force was underinsured and that Lloyd's UIM policy provided primary insurance coverage to Lloyd, Dennis, and VanVleet under Paragraph 2a because they sustained bodily injuries while occupying Lloyd's vehicle that was covered by the policy.  And there is no dispute that their bodily injuries exceeded the $40,000 limit of Force's insurance coverage.  Further, there is no dispute that Lloyd's $500,000 "per occurrence" UIM limit must be reduced by that $40,000 so that Home-Owners is liable to pay only $460,000 under Lloyd's UIM policy for this occurrence.

Dennis and VanVleet also made claims against their own UIM policies which could potentially provide coverage under Paragraph 2b(1)(b)—because they were occupying a vehicle they did not own and that vehicle was not covered under their own UIM policies.  So, in addition to recovering under Lloyd's UIM policy, Dennis sought to recover his "per person" limit of $250,000 under his UIM policy and VanVleet sought to recover his "per person" limit of $50,000 under his UIM policy.  With regard to their claims under their own UIM policies, Lloyd's UIM policy would be considered "Other Underinsured Motorist Insurance" under Paragraph 5 set forth above.  Similarly, with regard to Dennis's and VanVleet's claims made against Lloyd's UIM policy, their own UIM policies would be considered "Other Underinsured Motorist Insurance."  In other words, claims filed against any of the three UIM policies are subject to the terms set forth in Paragraph 5, the "other insurance" clause.

It is well-established that these "other insurance" clauses "are provisions included in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *Pioneer State Mut Ins v TIG Ins Co*, 229 Mich App 406, 411; 581 NW2d 802 (1998).  There are three general categories of "other insurance" clauses: (1) "pro-rata" clauses which purport to limit the insurer's liability to a proportionate percentage of all

insurance providing coverage; (2) "escape" or "no-liability" clauses which state that there shall be no liability if the risk is covered by other insurance; and (3) "excess" clauses which "limit the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." *Id*., citing *St Paul Fire & Marine Ins Co v American Home Assurance Co*, 444 Mich 560, 564-565; 514 NW2d 113 (1994). Our Supreme Court explained that these "other insurance" clauses originated in property insurance to protect insurers from inflated liability claims by insureds who over-insured their property and insurance companies "continue to include these provisions as standard clauses in liability policies even though potential fraud through over-insurance in this context is remote." *St Paul Fire & Marine*, 444 Mich at 564.

The UIM policies from Home-Owners at issue in this case state, in Paragraph 5, that when such "other Underinsured Motorist Coverage applies, we will pay our share of the compensatory damages . . . [which] will be the ratio of our limit of liability to the total of all limits which apply." It also states: "Total damages payable for one occurrence shall be considered not to exceed the limit of liability of the applicable policy that has the highest limit of liability." This is known as a pro-rata clause, which has been explained by our Supreme Court as follows:

> [T]he language creates a formula for establishing the liability of the insurer when other, collectible insurance exists on a proportionate basis. In other words, they are generally intended to become effective only when other valid and collectible *primary* insurance is available. [*St Paul Fire & Marine*, 444 Mich at 566-567 (emphasis added).]

It is undisputed in this case that Lloyd's UIM policy was the *primary* insurance available. Thus, with respect to claims made against Lloyd's UIM policy, the total damages payable to Lloyd, Dennis, and VanVleet was $500,000—the "per occurrence" limit of Lloyd's UIM policy—less the "per occurrence" limit of $40,000 of Force's insurance policy, for a total of $460,000.

But Dennis and VanVleet also made claims against their own UIM policies. And in that regard, Dennis and VanVleet rely on the "excess" clauses contained in their policies which state: "The coverage extended to automobiles you do not own will be excess over any other insurance available to you." In other words, their UIM policies did not provide primary insurance coverage under the facts of this case; rather, these policies only provided "excess" insurance. As our Supreme Court explained, an "excess" other-insurance clause means that

> the policy will provide coverage only for liability above the maximum coverage of the primary policy or policies. In other words, it is generally the insurer's intent that the policy only afford *secondary* coverage when the same loss is covered by other insurance. [*Id*. at 567-568 (quotation marks and citation omitted; emphasis added).]

Our Supreme Court has held that, when considering disputes involving an insurance policy with a pro-rata clause and an insurance policy with an excess clause—and those clauses are not in conflict or mutually repugnant—the policy containing the excess clause is only considered "secondary coverage where there is another insurance policy covering the same risk." *Id*. at 573. Thus, the policy with the excess clause "is not considered to be other valid and collectible primary

insurance for the purpose of triggering the operation of the pro-rata clause." *Id*. at 575.[2] And when a claim is made pursuant to the excess clause—this secondary insurance coverage—"the excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the pro-rata 'other insurance' clause." *Id*. at 573. In other words, after the primary insurance provider has paid up to its policy limits, the secondary—excess—insurance provider becomes liable for losses that exceed that amount.

In this case, it is undisputed that Lloyd's UIM policy was the primary insurance coverage available to the occupants of Lloyd's vehicle. Thus, Dennis's and VanVleet's own UIM policies provided *secondary* coverage as provided by the "excess" clauses of their UIM contracts. Their policies became operative or collectible after Lloyd's policy limits were paid, to the extent that their losses exceeded Lloyd's policy limits. So, in addition to recovering under Lloyd's UIM policy, Dennis was entitled to seek the recovery of his "per person" limit of $250,000 from his UIM policy and VanVleet was entitled to seek the recovery of his "per person" limit of $50,000 from his UIM policy, to the extent they could establish losses totaling those amounts in excess of Lloyd's policy limits.

But Home-Owners argues that "coverages cannot be stacked above the amount of the applicable policy with the highest limit of liability." In support of its "antistacking" argument, Home-Owners relies on *Detroit Auto Inter-Ins Exch v Gavin*, 416 Mich 407; 331 NW2d 418 (1982). But in that case, the injured insured attempted to "stack" her own UIM coverage with that of her father's three UIM policies—so that she sought to recover benefits under all four UIM policies—on the ground that she was a member of her father's household. *Id*. at 411-412. Another injured insured in that case attempted to recover benefits under two separate UIM policies she had on two different vehicles she owned, despite only being in an accident with one of those vehicles. *Id*. at 413-414.

Home-Owners' reliance on *Gavin* is misplaced because neither Dennis nor VanVleet claimed that they had other applicable UIM polices in their names, on other vehicles, or in their households that should be combined, i.e., "stacked," to increase their UIM coverage limits for this occurrence. They also did not claim that Lloyd had other applicable—and primary—UIM polices that should be "stacked" to increase his coverage limits available for liability purposes. Generally, the "stacking" of insurance policies refers to an insured attempting to combine coverage limits from a single policy that insures two or more of their vehicles or from other policies the insured has on different vehicles or from other policies in the insured's household.[3] For example, if the insured has three vehicles in his household with UIM coverage limits of $25,000 on each vehicle,

---

[2] In this regard, our Supreme Court, in *St Paul Fire & Marine*, 444 Mich at 575-577, adopted the reasoning of *Jones v Medox, Inc*, 430 A2d 488, 491 (DC App, 1981).

[3] See, e.g., *Gavin*, 416 Mich at 411-412; *Bradley v Mid-Century Ins Co*, 409 Mich 1, 21-23, 46, 48, 57-58; 294 NW2d 141 (1980), overruled on other grounds by *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63; 664 NW2d 776 (2003) ("the rule of reasonable expectations has no application in Michigan"); *Kozak v Detroit Auto Inter-Ins Exch*, 79 Mich App 777, 782-783; 262 NW2d 904 (1978).

"stacking" these insurance policies would result in a UIM coverage limit of $75,000. One other type of "stacking," or attempt at "stacking," occurs when an injured party seeks the combining of a tortfeasor's several insurance policies for purposes of increasing the tortfeasor's liability limits available for recovery in a claim against the tortfeasor, but such attempts at "stacking" have been rejected.[4] In any event, none of the plaintiffs have attempted to "stack" insurance policies in this case, and thus, this argument is without merit.

And to the extent that Home-Owners is attempting to resurrect the argument challenging whether a pro rata clause or an excess clause in competing insurance policies, which are not in conflict, should be given effect, we reject the invitation to revisit this well-settled issue. As discussed above, our Supreme Court has thoroughly considered and clearly decided the matter. Further, our Supreme Court recognized that "these clauses are inserted deliberately and are thus the negotiated intent of the contracting parties." *St Paul Fire & Marine*, 444 Mich at 570.

At issue in this case are three separate UIM policies that were purchased from Home-Owners by three different insureds. With regard to Dennis and VanVleet, pursuant to the "excess" clauses of their UIM policies, their coverage is secondary and is not available unless or until the coverage under Lloyd's UIM policy is exhausted. See *id*. at 573. That is, their coverage is only for damages above and beyond the primary coverage they are entitled to under Lloyd's UIM policy. Thus, Dennis and VanVleet are entitled to seek the amount of damages that exceeds the coverage that was provided by Lloyd's UIM policy up to the "per person" coverage limits of their own personal UIM policies. Accordingly, we disagree with the trial court's conclusion that, consistent with the holding in *Wilkie*, 469 Mich 41, plaintiffs were limited to collecting benefits under Lloyd's policy only. *Wilkie* did not address an "excess" clause in a UIM policy.

In summary, the trial court erred in granting Home-Owners' motion for partial summary disposition and in denying plaintiffs' motion for partial summary disposition in this regard. Thus, that order is reversed and this matter is remanded so that further proceedings consistent with the parties' stipulation and consent judgment with regard to Lloyd, Dennis, and VanVleet may take place.[5]

Plaintiffs also argue that defendant Force's $40,000 "per occurrence" policy limits should only be deducted from Lloyd's primary insurance coverage, and not from the excess—and secondary—insurance coverage Dennis and VanVleet are entitled to under their own UIM policies.

---

[4] See, e.g., *State Farm Mut Auto Ins Co v Tiedman*, 181 Mich App 619, 621-624; 450 NW2d 13 (1989); *Auto Club Ins Ass'n v Lanyon*, 142 Mich App 108, 109-111; 369 NW2d 269 (1985).

[5] In pertinent part, Paragraph 9 of the parties' stipulation and consent judgment states: "In the event it is ultimately determined on appeal that the Home-Owners total UIM per occurrence limit applicable to the claims of Lloyd Pierson, the Estate of Dennis Pierson and the Estate of Gerald VanVleet is more than $460,000.00, . . . Home-Owners agrees to pay the higher amount, but in no event shall Home-Owners be liable to pay more than the following additional amounts, which shall include all interest: a) with respect to the claims of Lloyd Pierson, the Estate of Dennis Pierson and the Estate of Gerald VanVleet, the total additional amount of $300,000 (or a total amount of $760,000.00 including the judgment amount referred to paragraph 6) . . . . ."

We disagree. Further, plaintiffs argue, defendant Force's $20,000 "per person" limit should not be subtracted from Reid's recovery of $100,000 under his own UIM policy. We disagree.

First, we address Dennis and VanVleet's claims under their own UIM policies. They sought UIM benefits under the "excess" clauses of their personal policies, which state: "The coverage extended to automobiles you do not own will be excess over any other insurance available to you." The critical phrase here is "any other insurance available to you." The use of the word "any" means " 'every,' 'each one of all,' and is unlimited in its scope." *Parker v Nationwide Mut Ins Co*, 188 Mich App 354, 356; 470 NW2d 416 (1991). Further, Lloyd's insurance and Force's insurance were "available" to Dennis and VanVleet. In *Wilkie*, 469 Mich at 50, our Supreme Court specifically rejected the argument that "available" meant "actually received." It does not. Dennis and VanVleet filed claims for UIM coverage under their own policies and this provision in those policies applies to their claims. "The rights and duties of parties to a contract are derived from the terms of the agreement." *Id*. at 62. The fact that Force's $40,000 "per occurrence" limit was deducted from claims made against Lloyd's UIM policy does not change the result. Accordingly, claims made under Dennis's and VanVleet's own UIM policies must be reduced by Force's policy limits, i.e., the $20,000 "per person" limit, as to each of their individual claims.

A similar reasoning applies to plaintiffs' argument that Reid's $100,000 recovery under his own UIM policy should not be set off by Force's $20,000 "per person" limit. Reid's policy contained Paragraph 4, the "Limit of Liability" provision, which states, in relevant part:

a. Our Limit of Liability for Underinsured Motorist Coverage shall not exceed the lowest of:

(1) the amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all bodily injury liability bonds and policies available to the owner or operator of the underinsured automobile[.]

\* \* \*

c. The amount we pay will be reduced by any amounts paid or payable for the same bodily injury:

\* \* \*

(3) by or on behalf of any person or organization who may be legally responsible for the bodily injury.

Again, the use of the term "available" does not mean "actually received." See *Wilkie*, 469 Mich at 50. It is irrelevant that claims made under Lloyd's UIM policy had already been subjected to a set off by Force's $40,000 "per occurrence" limit. Reid made a claim under his own UIM policy and that policy's provisions, including Paragraph 4a(1), apply. Further, the Limit of Liability provision also states that the amount paid on a claim will be reduced by any amounts "paid or payable for the same bodily injury." The term "payable" is defined as: "1. to be paid; due . . . 2. capable of being or liable to be paid." *Random House Webster's College Dictionary* (1997),

p 957.  So, it was not required that payment actually be made before the set off applied; rather, the UIM policy provided for a set off of coverage by amounts liable to be paid for the same bodily injury.  And Force was liable to Reid in the amount of her "per person" policy limit of $20,000; therefore, the limit of liability applicable to Reid's claim under his UIM policy is $80,000.

Reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly